In the Matter of the Accounting of NEIL G. HARRISON, as Executor of CARRIE E. COFFIN, Deceased.

Surrogate's Court, Broome County, December 16, 1954.

*Chandler Y. Keller* and *Neil G. Harrison,* in person, for Neil G. Harrison, as executor, petitioner.

*Emory C. Resseguie,* special guardian for Timothy Rogers and others, infants, respondents, and others.

PAGE, S. In this proceeding an issue is raised by the special guardian for infant respondents herein as to the construction and effect of provisions contained in paragraph " Fourth " of the last will and testament of said deceased, reading as follows: " Fourth: In the event that my estate exceeds Thirty thousand dollars ($30,000.00) in value, then I give and bequeath to the Volunteers of America and to the Salvation Army to be used for social benefit and for the needy Five hundred dollars ($500.00) each, and the remaining part of my estate I direct my executor to invest in an annuity or annuities to provide an income for life for my grandson James Tracy Rogers, such income to begin at a time chosen and fixed by my executor. It is my will that provisions for payment of the annuity be made so that in case said James Tracy Rogers shall not live to receive the full benefits due therefrom that his issue, if any, shall succeed to the same; and that if there be no such issue or if there be benefits beyond the life or lives of said issue, then that such benefits shall accrue to and operate in favor of the Young Men's Christian Association of Binghamton, N. Y. for the support and maintenance of the activity carried on by them at some time under the title of Camp Arrowhead, where my grandson was at one time employed."

The testatrix was survived by her grandson, James Tracy Rogers. At the date of her death, he had no living issue but has since become the father of the three infant respondents represented by the special guardian herein.

As shown by his accounts herein, the executor has purchased three annuity policies at a cost of $25,000, $20,000 and $10,000, respectively, providing for annuities over periods of thirty-one, twenty-nine and thirty years, respectively, the respective annuity payments being $812.25, $691.00 and $308.70. Also, the executor has about $10,000 of additional funds on hand subject to disposition pursuant to the above-quoted provision of the last will and testament of the deceased.

In the case of the first annuity policy above-mentioned, in the event of the death of said James Tracy Rogers at any time previous to the completion of all payments provided in the annuity contract, provision for the continuation of such payments is as follows, " If annuitant dies, company will continue the periodical payments to any surviving issue of the said annuitant, equally or to the survivors or survivor, and if there be no surviving issue, then to the Young Men's Christian Association of Binghamton, New York." Similar provisions are contained in the other policies in substantially the same language.

The special guardian objects to the said annuity contracts in relation to the above-quoted provision contained in them, and contends that each of the said annuity policies should be amended so as to provide that, in the event of the death of said James Tracy Rogers without having received all of the annual payments provided in and by any or all of said policies, the then actuarial present value of the remaining payments shall thereupon, in a lump sum, become immediately due and payable in equal shares to the then living issue of said James Tracy Rogers.

One of the arguments advanced in support of this contention is that the present policy provisions are at variance with the testatrix' intent as expressed by her in the above-quoted paragraph " Fourth " of her last will and testament. With this contention the court is unable to agree. It appears to be clearly apparent that the primary intent of the testatrix was to provide an annual income for her grandson to be extended over a period of time which would constitute the best guess the executor might be able to make as to the probable duration of his remaining lifetime. In order to take care of the contingency that the grandson might predecease the expiration of the period provided in one or more of the annuity policies, she expressly provided that, " In case the said James Tracy Rogers shall not live to receive the full benefits due therefrom (from the annuity contracts) his issue, if any, shall *succeed* to the same." (Emphasis supplied.) From this it is clear that she, except as

to the recipient or recipients thereof, did not envisage any difference in the mode and method of making the annuity payments which might, because of the possible death of her grandson before he had received all of them, become payable thereafter.

The special guardian has advanced a further contention herein to the effect that the above-quoted provision of paragraph " Fourth " of the will here in question, insofar as it relates to the possibility that annuity payments might be continued after the death of testatrix' grandson, is void because of its being in violation of the " rule against perpetuities " (Personal Property Law, § 11; Real Property Law, § 42).

In considering this issue, we are concerned with the gift of an annuity. But, " In effect the gift (of an annuity) is a simple, general legacy, having the legal attributes of general legacies, and differing from such bequests only in that payment is made in periodical sums." (See 2 Davids on New York Law of Wills, § 851, and cases there cited.) Insofar as the above-quoted provision of the will here in question provides for a gift of a general legacy to the testatrix' grandson, it is, of course, perfectly legal and unobjectionable. It is only as to the provision therein contained purporting to control the disposition of possible installments of the legacy falling due subsequent to her grandson's death concerning which an issue of law must be determined. As to this contingent provision, pursuant to the wording of this paragraph, possible donees of a, presently contingent, number of the installments of the legacy are not limited upon the lives of no more than two persons who were in being at the date of the death of the testatrix. As of the date of the will it was, of course, true that the possible beneficiaries might very well be more than two and some or all of them not in being at the will's effective date, the effect of which is that the full ownership and power to dispose of the legacy not only might but in all probability would be suspended to an extent not permitted.

*Wells* v. *Squires* (117 App. Div. 502, affd. 191 N. Y. 529) is a case in which a very clear exposition is given as to what constitutes an unlawful suspension of the absolute ownership of personal property, in that case, like the present, in the form of an annuity.

*Matter of Trumble* (199 N. Y. 454, 456) was a case before the Court of Appeals in 1910 which, in respect to the bearing and effect of the " rule against perpetuities," dealt with a situation identical with that presented in the instant case.

In that case, the testator had directed the executor of his will to convert all of his residuary estate into money and deposit the proceeds in interest-bearing bank accounts, " and to pay therefrom monthly to such of said sisters named in this paragraph of this will as are living at the time of my death the sum of forty dollars to each until such moneys and interest are fully paid out to them. In case one or more of my sisters named in this paragraph of my will shall survive me, but shall die before said fund is fully paid out, then in that case from that time on, I direct my executor hereinafter named to pay to the heir or heirs of such sister  *  *  *  the monthly sum of forty dollars until said fund is fully paid out; it being my intention and direction that the said heir or heirs  *  *  *  shall be substituted in the place of said sister and receive the said sister's payment of forty dollars per month ".

In that case the Appellate Division had modified the Surrogate, and the Court of Appeals modified the Appellate Division. The Court of Appeals, citing and following the principles set forth in *Wells* v. *Squires* (*supra*), arrived at the determination that the testator's gifts to his sisters were mutually independent of each other and that each of his sisters who survived the testator took as a vested legacy the sum of $40, payable each and every month during the lifetimes of such sisters respectively, " and that subject to such legacies the residue of the testator's estate mentioned in the fourth paragraph of his will passes to the next of kin of the testator, as provided by the Decedent Estate Law ".

It does not appear that, either by statute or otherwise, this case has ever been overruled or modified. Therefore, it must be regarded as binding authority upon this court and, as such, determinative of the issue of law in relation to the validity or invalidity of the testamentary provision subjected to construction herein.

Therefore, the conclusion follows that the above-quoted testamentary provision is valid insofar as it confers a legacy in installments upon the testatrix' grandson, James Tracy Rogers, but that it is in violation of the " rule against perpetuities ", that is the above-cited sections of the Real Property Law and Personal Property Law, and, therefore, invalid as to the substitutionary gifts provided for his issue. In the event that James Tracy Rogers should predecease the payment of the last installment payable under any one or more of the annuity contracts now purchased or to be purchased for his benefit, the remaining

value thereof would constitute an intestate asset or assets of the estate of his grandmother and pass to her distributees. But, since said James Tracy Rogers may live to receive all payments in full, the devolution of any that might remain unpaid at his death is academic at the present time and, therefore, subject to determination and adjudication if and when this question arises.

Settle decree accordingly.